UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**JOHN M. HAWVER, JR.**

                              **Plaintiff,**

                              **-v-**                            **6:15-CV-1517**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Peter W. Antonwicz, Esq.
Office of Peter W. Antonowicz
148 West Dominick Street
Rome, New York 13440
Attorney for Plaintiff

Elizabeth D. Rothstein, Esq.
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorney for Defendant

**Hon. Norman A. Mordue, Senior District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

On December 10, 2012, plaintiff protectively filed an application for supplemental security income, alleging an onset date of December 1, 2009. The application was initially denied on March 20, 2013. Thereafter, plaintiff filed a request for a hearing, and a hearing was held on May 5, 2014. Administrative Law Judge Gregory M. Hamel issued an unfavorable determination on the claim. The Appeals Council denied plaintiff's request for review. Plaintiff brought an action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, asking the court to reverse the Commissioner's decision to deny her application for disability benefits.

Presently before the court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 13). For the reasons set forth below, the court concludes that the Commissioner's decision should be affirmed.

**DISCUSSION**

**A.     Legal Standard**

The Social Security Act authorizes payment of disability insurance benefits or SSI benefits to individuals with "disabilities." To be considered disabled, a plaintiff must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1832c(a)(3)(A). The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set

aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

**B.     ALJ's Decision**

First, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. (Tr. 12). The ALJ then concluded that plaintiff's back pain with herniated disc, radiculopathy, obesity, asthma, and depression were severe impairments. The ALJ explained that plaintiff is a "35-year-old individual with a ninth grade education [and] has undergone treatment for back pain, breathing difficulties and depression [which] cause more than a minimal effect on [his] ability to perform basic work activities" and therefore, are considered severe impairments. (Tr. 12). With respect to plaintiff's physical impairments, the ALJ discussed listings 1.04 and 3.02 and determined that the impairments did not meet the requirements of the listings. The ALJ then considered whether plaintiff's mental impairment met or medically equaled the criteria of listing 12.04. (Tr. 13-14). The ALJ explained that plaintiff recently started receiving mental health treatment, and that the treatment records show improvement. He further found that plaintiff has no more than a mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. Therefore, the paragraph B criteria were not satisfied. The ALJ also found that the paragraph C criteria were not satisfied, and therefore, plaintiff's mental impairment did not meet the listing.

Next, the ALJ discussed the evidence and determined that plaintiff has the residual functional capacity to perform sedentary work except that he can "occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; he cannot climb ladders and similar devices; he cannot

work in exposure to high concentration of dust, fumes, gases, and other pulmonary irritants; he can do routine and repetitive tasks only; and he cannot do tasks requiring more than occasional public contact." (Tr. 15).

The ALJ outlined plaintiff's testimony that he does not do laundry, does dishes, but sits at the sink to do so, that he does not do grocery shopping because it causes too much pain, but that he visits his sister a few times a week, and that he is kept from working because it is hard to stand or walk long because he has pain and he avoids doing activity because of back pain. (Tr. 16). The ALJ also noted that plaintiff sits on the edge of the tub to wash off, and sits on the edge of the bed to get dressed. The ALJ concluded that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely credible. (Tr. 16). In this regard, the ALJ noted that although plaintiff performs a limited range of activity, there is not much in the physical examination findings to suggest that he could not be more active, and indeed, has been encouraged by his doctor to build more physical activity into his daily life. The ALJ also explained that many of the activities that plaintiff does, he does while sitting, demonstrating an ability to sit beyond that alleged. The ALJ also found plaintiff's sporadic work history to raise a question as to whether his continuing unemployment is due to medical impairments. The ALJ also discussed plaintiff's treatment, determining that it has been essentially routine and conservative in nature.

The ALJ placed great weight on the opinion of the state agency psychological consultant who determined that plaintiff "is capable of understanding and following simple instructions and directions and of performing simple tasks, and he is able to interact moderately well with others."

(Tr. 19).  The ALJ found this opinion to be supported by and consistent with the medical evidence of record, pointing, as an example, to the consultative examination where plaintiff was able to count and do simple calculations, able to recall three objects immediately and two after five minutes, and his insight and judgment were fair.  The ALJ also placed great weight on the opinion of Dennis Noia, Ph.D., who opined that plaintiff could "perform simple tasks with supervision and independently, he can maintain a schedule and regularly attend to a routine, he is capable of learning new tasks, and he relates and interacts moderately well with others."  (Tr. 19).  The ALJ concluded that this opinion was supported by the treatment records, noting a December 18, 2013 treatment note indicated that plaintiff was doing very well, seemed positive, and agreed that his goal should be to find a job that will help him take charge of his life financially. (Tr. 19).

 The ALJ placed less weight on the opinion of Tanya Perkins-Mwantuali, M.D., who stated that plaintiff has a mild limitation with bending.  The ALJ found that there is some support for this opinion, additional evidence shows that plaintiff has further limitations than those assessed by Dr. Perkins-Mwantuali, including in his ability to ambulate, and range of motion.  (Tr. 19-20).  The ALJ assigned minimal weight to the opinion of Erik Nasif, P.T., who stated that plaintiff can only sit, stand, or walk for a total of less than two hours in an eight-hour workday, and otherwise limits plaintiff to less than sedentary work.  The ALJ concluded that this opinion was not consistent with the medical evidence, or with plaintiff's testimony that he sits for significant portions of the day, and Mr. Nasif is also not an acceptable medical source.  Similarly, the ALJ assigned little weight to the opinion of Dr. Vivienne Taylor, who opined that plaintiff was only capable of standing or waking for one hour or less in an eight-hour workday, can sit for only two hours or less in an eight-hour workday, and can only stand or walk for ten minutes at a time, and

would miss more than four days of work per month because of his symptoms. The ALJ found this opinion to be inconsistent with the overall record, including with Dr. Taylor's own treatment notes. (Tr. 20). The ALJ also placed little weight on the New York Office of Temporary Disability Assistance form completed by Dr. Taylor for similar reasons.

The ALJ next concluded that plaintiff was unable to perform any past relevant work, as it was all light exertion or greater, and the RFC determination limited him to sedentary work. Because the ALJ found that plaintiff had additional limitations on the full range of sedentary work, he consulted a vocational expert to determine whether jobs exist in the national economy for an individual with plaintiff's age, education, work experience, and residual functional capacity. The vocational expert pointed out three specific jobs that plaintiff would be able to perform. (Tr. 22). Consequently, the ALJ found that plaintiff was "not disabled." (Tr. 23).

**C.    Issues In Contention**

Plaintiff argues that the ALJ committed reversible error by failing to consider whether plaintiff's intellectual impairment is a severe impairment, and by failing to consider whether this impairment met or equaled the requirements of Listing 12.05. Plaintiff also argues that the ALJ erred by failing to properly develop the record.

**D.    Analysis**

1.    <u>Severity of Intellectual Impairment</u>

The claimant bears the burden of presenting evidence establishing severity at Step 2 of the disability analysis. *Briggs v. Astrue*, No. 5:09-CV-1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Report-Recommendation), adopted, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or

mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c); see also 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at Step 2 if it does not significantly limit a claimant's ability to do basic work activities). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). It is quite clear from these regulations that "severity" is determined by the limitations imposed by an impairment, and not merely its by diagnosis. The "presence of an impairment is . . . not in and of itself disabling within the meaning of the Act." *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995) (citations omitted).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3). The Second Circuit has held that the Step 2 analysis "may do no more than screen out de minimis claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a de minimis level, then the remaining analysis of the claim at Steps 3 through Step 5 must be undertaken. *Id*. at 1030.

As an initial matter, the Court notes that plaintiff himself did not claim his intellectual impairment/mental retardation is the cause of his inability to work. For example, during the

hearing when asked to say, in his own words, why he thinks he can't work now, he stated "because if I stand or walk too far I can't do it because of all the pain. The pain is so bad if I stand and walk, I, it puts me to the ground. And I avoid doing most of the stuff I usually do because of the back pain. And, I wish I was the way I was before. Being able to do the stuff I used to do." (Tr. 51-52). Similarly, plaintiff replied "back problem" when asked the most significant condition causing his disability. (Tr. 54). Later, plaintiff's attorney asked "we've mentioned your back, we've mentioned your weight. Any other conditions that need to be addressed here in regard to limiting your ability to work?" (Tr. 60). Plaintiff responded that he "mentioned to both doctors about the numbness on the right, on the left side of the leg." (Tr. 60). They continued, and mentioned plaintiff's breathing, and depression, but did not mention an intellectual disability. (Tr. 61). Additionally, in a psychiatric visit on September 25, 2013, plaintiff reported a desire to go back to work but felt "physically he is not able to." (Tr. 428). Despite plaintiff's focus on his physical impairments, the ALJ did find plaintiff's mental impairment of depression to be a severe impairment, and even discussed whether it met or medically equaled the requirements of Listing 12.05.

Plaintiff nonetheless argues that an educational record from when plaintiff was 16 that noted his composite IQ score to be 69, with no attached report, should have been sufficient for the ALJ to decide that plaintiff's intellectual impairment was not only severe, but also met the requirement of Listing 12.05. As defendant observes, plaintiff has performed semi-skilled work for three years after this 1995 IQ score. Moreover, the remaining evidence in the record is essentially normal regarding plaintiff's intellectual functioning. For example, when examined by Dr. Noia, plaintiff's speech intelligibility was fluent, his thought process was normal, his attention

and concentration was intact, he could perform simple calculations and serial threes. Dr. Noia found plaintiff's intellectual functioning as being in the borderline range, and opined that plaintiff could understand and follow simple instructions and some complex tasks.

Additionally, often when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at Step 2 may be harmless because the ALJ continued with sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031. Here, the ALJ did continue with the sequential analysis, considering both plaintiff's physical impairments and his mental impairment. The Court further notes that to account for plaintiff's mental impairments, the ALJ's RFC determination limits plaintiff to only routine and repetitive tasks, and to tasks only requiring occasional public contact.

Consequently, the Court concludes that ALJ did not err by failing to find plaintiff's intellectual impairment a severe impairment at Step Two.

2.  Listing 12.05

As discussed above, the ALJ did not err by determining that plaintiff's intellectual impairment were not "severe." For similar reasons, the Court determines that the ALJ did not err by failing to evaluate plaintiff's impairments under subsection C of listing 12.05.

Under the regulations, a plaintiff suffers from mental retardation if he exhibits

"significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Part A, § 12.05. Further, "[t]he required level of severity for this disorder is met when" plaintiff has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

As defendant observes, this listing requires showing of both a full scale IQ of 60 through 70 and "deficits in adaptive functioning initially manifested during the developmental period." The Court agrees that plaintiff has failed to show a valid IQ score of 60-70, and has further failed to demonstrate that he had deficits in adaptive functioning that manifested before age 22. Plaintiff's IQ score is not sufficiently current, as it was on April 13, 1995, when plaintiff was 15, 19 years before the ALJ's decision. According to the regulations, "IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the IQ is less than 40, and for 2 years if the IQ is 40 or above." 20 C.F.R. Part 404, Subpart P, App. 1, § 112.00D(10). Additionally, the record contains only a school report listing this IQ score, rather than the assessment itself, which would have explained the testing, and plaintiff's participation in the testing.

Significantly, even if the IQ score was considered valid, plaintiff has failed to show deficits in adaptive functioning as required by the regulation. The ALJ determined that plaintiff did not have more than a mild restriction in activities of daily living. Plaintiff was able to dress, bathe, and groom himself, which, the Court notes, was confirmed by the medical records where his treating providers found him to exhibit appropriate hygiene and grooming. The ALJ further

observed that plaintiff could also sometimes cook and prepare food and wash dishes, and, the Court notes, his limitations in these areas appeared to come from his physical limitations, not any alleged intellectual impairments. The record also demonstrates that plaintiff was able to use public transportation, count change and handle money, fish, ride a bike, and visit with family. It appears that the only reason he was unable to perform certain chores was his physical impairments, not an inability to intellectually perform these tasks. (*See, e.g.,* Tr. 194-204). Plaintiff also admitted in his function report that he was able to follow simple instructions. (Tr. 201). As noted above, plaintiff also performed semi-skilled work as a security guard for three years. Additionally, plaintiff's psychiatrist has encouraged plaintiff to find a job, again, confirming plaintiff's mental capacity to work. Plaintiff's ability to perform these activities, and the records of his visits with providers is inconsistent with deficits in adaptive functioning.

The Court concludes that the ALJ did not err by concluding that plaintiff did not have a severe intellectual impairment, or by failing to specifically discuss Listing 12.05.

3.     Failure to Develop the Record

Finally, plaintiff argues that the ALJ should have required additional intellectual testing if he was not satisfied with the evidence produced by the plaintiff regarding his intellectual impairments. The Court disagrees. Although the ALJ has an affirmative duty to develop the record, this is not required where the evidence already in the record was "adequate for [the ALJ] to make a determination as to disability." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). Additionally, plaintiff did attend a consultative examination with Dennis Noia, Ph.D. Dr. Noia evaluated plaintiff, estimated his intellectual functioning as being in the borderline range, found his thought processes coherent and goal directed, found his attention and concentration intact, and

determined that vocationally he was capable of understanding and following simple instructions and directions, capable of performing simple and some complex tasks with supervision and independently. The Court concludes that the ALJ did not err by failing to further develop the record.

## CONCLUSION

For these reasons, it is therefore

ORDERED that the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is GRANTED; and it is further

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is DENIED; and it is further

ORDERED that the Clerk of the Court is directed to enter judgment for the Commissioner.

IT IS SO ORDERED.

Date:   January 13, 2017

Norman A. Mordue
Senior U.S. District Judge